**UNITED STATES of America,**
**Appellee,**

v.

**Manzoor QUADAR, Defendant–**
**Appellant.**

No. 03–1386–cr.

United States Court of Appeals,
Second Circuit.

March 16, 2007.

Uzmah Saghir, Esq., New York, NY, for Defendant–Appellant.

Lauren M. Ouziel, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Jo Ann M. Navickas, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

PRESENT: Hon. THOMAS J. MESKILL, Hon. RALPH K. WINTER and Hon. CHESTER J. STRAUB, Circuit Judges.

## SUMMARY ORDER

Defendant–Appellant Manzoor Qadar[1] appeals from a judgment entered on June 19, 2003 by the District Court for the Eastern District of New York (Ross, *Judge* ), convicting the defendant, after a jury trial, of one count of murder for hire and one count of conspiracy to commit murder for hire, both in violation of 18 U.S.C. § 1958, and one count of possessing a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c), and principally sentencing the defendant to two concurrent terms of life imprisonment on the murder-for-hire counts and five years' imprisonment to run consecutively on the firearm count. We assume the parties' familiarity with the balance of facts, procedural history, and specification of issues on appeal.

Qadar first contends that the evidence before the jury was insufficient to convict him. When faced with a challenge to the sufficiency of the evidence, we must view the evidence in the light most favorable to the government, construe inferences in the government's favor, and affirm the conviction unless " 'no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.' " *United States v. Aleskerova,* 300 F.3d 286, 292 (2d Cir.2002) (quoting *United States v. McDermott,* 245 F.3d 133, 137 (2d Cir.2001)).

■ With regard to the conspiracy count, Qadar asserts that there was no direct evidence establishing that he had agreed to travel to the United States with the intent of participating in the murder for hire of Shaukat Parvez. However, proof of intent to join a conspiracy may be inferred solely from circumstantial evidence, *see Aleskerova,* 300 F.3d at 292–93, and here, the circumstantial evidence was more than enough for the jury to find the requisite intent: Qadar, who had no independent reason to harm Parvez, spent twice his weekly salary to fly on short notice to the New York area, where he helped his cousin Omar track down and then kill Parvez, only to fly back to England immediately after the shooting. The evidence also established that Malik Rahmet Khan ("Rahmet") was willing to pay someone $60,000 to help with Parvez's murder. The jury could reasonably conclude from these facts that prior to his trip to the U.S., Qadar had reached an agreement with either Omar or Rahmet, or both, that he would travel to New York to assist in the killing of Parvez.

■ With regard to his conviction for murder for hire, Qadar again claims that there was "no" evidence to establish his intent at the time he left England for the U.S., but as explained above, there was sufficient circumstantial evidence for the jury to conclude that the purpose of Qadar's trip was to earn money by helping kill Parvez. Qadar also urges that the jury could not reasonably find that Qadar expected to receive, or did in fact receive, something of pecuniary value in exchange for participating in the murder. On the contrary, it was undisputed at trial that Rahmet intended to pay someone $60,000 to help carry out the murder plot; eyewitnesses testified that two people committed the crime; Omar's sister Rubina testified that after the murder, Omar told her that Rahmet had paid someone to kill Parvez; and a recorded telephone conversation between Qadar and his wife indicated that Qadar did, in fact, receive money for participating in the crime. This evidence was

---

1. Although the case caption refers to "Quadar," both parties spell defendant's last name Qadar.

plainly sufficient for the jury to convict Qadar for murder for hire.

 Qadar next argues that the District Court erred in sentencing him to life imprisonment on the conspiracy count because the conspiracy charge did not specifically instruct the jury that it had to find that a death resulted from the conspiracy. The lack of a "death resulted" charge on the conspiracy count was harmless, however, because (1) the District Court included as an element of the substantive murder-for-hire count, which was read to the jury immediately before the conspiracy charge was given, "that the death of Shaukat Parvez resulted from the criminal venture"; (2) by finding Qadar guilty on the murder-for-hire count, the jury necessarily found that a death had resulted from the conspiracy; and (3) it was undisputed that Parvez died as a result of the crime.

Finally, Qadar argues that the District Court should have required the jury to find that he "actually committed or caused" Parvez's death in order to be subject to life imprisonment under 18 U.S.C. § 1958. Qadar did not raise this issue before District Court, so our review is for plain error. *See United States v. Svoboda,* 347 F.3d 471, 484 (2d Cir.2003); *United States v. Crowley,* 318 F.3d 401, 414 (2d Cir.2003). "For an error to be a plain error[ ] or [a] defect[ ] affecting substantial rights, Fed.R.Crim.P. 52(b), it must be a clear or obvious deviation from current law that affected the outcome of the district court proceedings." *Svoboda,* 347 F.3d at 484 (internal quotation marks and citations omitted). There was no plain error here because, even assuming *arguendo* that the District Court should have instructed the jury that it had to find that Qadar's actions caused Parvez's death, the evidence at trial established that Qadar, as either the driver of the Ford Taurus or the passenger-gunman, was in fact directly responsible for Parvez's death.

For the reasons set forth above, the judgment of the District Court is AFFIRMED.